**Ford T. JOHNSON, Jr.,**

v.

**UNITED STATES of America**

No. S–98–3050.

United States District Court, D. Maryland.

Jan. 15, 2002.

---

Ernest P. Francis, Law Office, Arlington, VA, for Ford T. Johnson, Jr., plaintiffs.

Gerald Alan Role, U.S. Department of Justice G/A, Melissa Anemojanis Holton, U.S. Dept. of Justice, Washington, DC, for USA, defendants.

## MEMORANDUM OPINION

SMALKIN, Chief Judge.

This case arises out of a tax dispute between the Internal Revenue Service and the plaintiff, Ford T. Johnson, who was, at all relevant times, the president, chairman of the board, and majority shareholder of Koba Associates, Inc. (Koba). Koba was a small company engaged in, among other things, community planning and economic development in the District of Columbia. In 1997, the IRS withheld $15,435.50 from Johnson's 1995 personal tax return, and Johnson brought this action to recover that amount. The IRS counterclaims that the plaintiff is liable for $887,726.78 (plus interest and statutory penalties) in Koba's unpaid employee withholding taxes from the last two quarters of 1994 and the first quarter of 1995. The IRS contends that the plaintiff is responsible for 100% of the unpaid taxes because he was a "responsible person," who willfully failed to pay employee withholding taxes for the three quarters indicated above. *See* 26 U.S.C. § 6672 (2001).

Johnson seemingly does not challenge the IRS's claim that he is a "responsible person" under section 6672, but he does contend that his conduct was not willful. Johnson argues that, prior to the three quarters in question, he hired Laurence Morrison, a highly qualified and experienced financial officer, to assume complete responsibility for Koba's financial affairs. When Johnson discovered that Koba was behind on its withholding taxes, he personally arranged a plan with the IRS to satisfy the company's tax liability. Johnson contends that he carefully instructed Morrison to comply with this plan and that he monitored Morrison's activities to varying degrees during the three periods in question. He also argues that, to his knowledge, Morrison was handling the company's tax liability in accordance with the IRS's wishes. Johnson also asserts that he was unaware of any non-compliance because: (1) Morrison was a highly qualified vice president of finance on whom he

could rely; (2) he was satisfied that Morrison knew of the importance of paying withholding taxes; (3) he had monitored Morrison's successful compliance with the plan at times; (4) whenever he met with Morrison to discuss the financial status of the company, Morrison never mentioned any further problems with the IRS; and (5) upon hiring Morrison, Johnson surrendered all control of Koba's accounting matters, and instead focused on marketing activities, obtaining new contracts, and supervising existing contracts.

Johnson also contends that, if found liable, the amount owing should be reduced in light of the IRS's rights as a creditor in Koba's bankruptcy proceedings, and the federal government's refusal to pay monies owed on contracts with Koba.

## I. *FACTUAL BACKGROUND*

Johnson founded Koba Associates in 1968. Shortly thereafter, he incorporated the company, acting as its sole officer, shareholder, and chairman of the board. Koba grew under Johnson's direction, and, by 1994, it had between 130 and 150 employees. Johnson was regularly involved in, and was responsible for, the day-to-day management and operation of the corporation. He made major hiring and firing decisions, and he employed and met weekly with a handful of vice presidents, all of whom reported directly to him. Johnson also managed Koba's finances and, until 1994, determined which creditors were paid and when.

It was not uncommon for Koba to be behind on its withholding taxes, even under Johnson's personal direction. Johnson explained, however, that he always managed to avoid serious action by the IRS:

"Being behind on taxes is not an unusual thing for a small company.... It happens all the time.... And you learn to live with it, and the IRS for the most part works with companies. They don't give you a lot of rope, but they want to see you make it too, and if you're reasonable and you keep your records—we had a history of 26, 27 years of being behind, but we always managed to get the quarterly payments made.

I was always able to juggle it. When I was in charge, it never didn't get paid, and I did that for 20 some years, so having—being behind in taxes or having penalties due was not an unusual thing. It was something that was quite standard, but we always were able to work a strategy out, get it paid, juggle with the vendors to get it done."

Johnson Depo. at 37–38.

Much of Koba's business consisted of community planning and development contracts with the District of Columbia. In the early 1990s, Koba's financial affairs were in jeopardy, in part because of its inability to collect monies owed under government and other contracts. Johnson had become increasingly involved with managing Koba's finances. In May 1994, Johnson hired Laurence Morrison, a highly qualified and experienced financial manager, as director of finance so that Johnson could focus entirely on other affairs.

### A. *The Third Quarter of 1994 (July—September)*

In the several weeks after Morrison was hired—into the third quarter of 1994—Johnson instructed Morrison on how to handle the company's finances. He explained to Morrison how to manage accounts payable and receivable by delaying some creditors while paying others, and how to keep current on employee withholding taxes. During this initial stage of Morrison's employment, Johnson closely supervised his work and met with him on a regular basis to discuss the financial posture of the corporation. Eventually, ac-

cording to Johnson, he promoted Morrison to vice president and surrendered full control of the financial department to Morrison. Within a few months, it appeared to Johnson that Morrison had finally balanced out Koba's financial affairs. Morrison ostensibly was satisfying creditors while still keeping Koba's finances afloat. Johnson assumed that this was because of Morrison's exceptional talent at collecting outstanding accounts receivable.

Johnson met with Morrison every Monday. Morrison regularly provided Johnson with an accounts payable list showing all of the corporation's creditors, as well as an accounting of the checks that had been written on corporate accounts. In October of 1994, Johnson reviewed and signed the corporate quarterly tax return for the third quarter of 1994, which he discussed with Morrison. On its face, the form indicated that Koba had unpaid withholding taxes due and owing in the amount of $415,853.82, and that no payments had been made by the corporation during the quarter.

B. *The Fourth Quarter of 1994*
*(October—December)*

According to Johnson, by the fourth quarter of 1994, Morrison had assumed full responsibility for Koba's finances; he was deciding independently which creditors to pay and which checks to write and was meeting independently with Koba's other vice presidents. In October 1994, the IRS notified Johnson that Koba was delinquent on its withholding taxes for the preceding period. Johnson immediately contacted the IRS. He explained on deposition that he understood the seriousness of cooperating with the government:

I wrote a letter to the IRS back in October ... basically giving them a pay out schedule [hereinafter "the October Plan"], and I met with [Morrison] at that time and said, Here is what I have

given my word on, you must now meet this, do not play with it because once you write a letter to the IRS and you tell them that this is what you're going to do, you better darn well do it or they will step in and they will issue a levy on you.

Johnson Depo. at 40.

Johnson also acknowledged his primary role in insuring that Koba met the plan's requirements:

I wrote the letter. I met with [Morrison]. I told him about the absolute importance of this. Not only had I given my name, but they would not play around at this point.

*Id.*

Johnson met with Morrison to make certain that he would abide by the agreement. Johnson then took a more direct role in supervising Morrison's activities. After he became satisfied that Morrison was meeting the requirements of the plan, he "backed off" and again relinquished control of the company's finances. Throughout the fourth quarter of 1994, Morrison provided Johnson with written summaries of Koba's financial status. According to Johnson, none of these reports mentioned any further problems with Koba's compliance with the October Plan or with its continuing obligation to pay withholding taxes for the fourth quarter. Moreover, Johnson claims that Morrison assured him that he was following the October Plan, and Johnson assumed this to be true. He explained that Morrison would have come to him if there were a major problem, and that he had "insisted enough" that Morrison abide by the October Plan.

In December, either Morrison or Sandra Robinson, the company's in-house counsel, received from the IRS a notice of intent to levy. The IRS took such action because of Koba's continued failure to pay employee

withholding taxes during the fourth quarter of 1994 and its failure to comply with the October Plan. Johnson reviewed and signed Koba's quarterly tax return for the fourth quarter of 1994, which, on its face, indicated that Koba had unpaid payroll taxes due and owing for that quarter in the amount of $324,655.65.

### C. *The First Quarter of 1995 (January—March)*

In January 1995, Robinson and Morrison notified Johnson of the IRS's intent to levy. Johnson again became "directly involved" in Koba's tax situation, engaging in "a whole flurry of meetings with the IRS to try to get them to back off issuing the levy." Johnson Depo. at 63. Johnson then set up yet another payment plan with the IRS. He appointed Robinson to monitor Morrison "to mak[e] absolutely certain that Morrison kept the commitment we made in January." The corporation, however, was unable to meet its tax obligations during the first quarter of 1995 as well. Again, Johnson reviewed and signed Koba's corporate tax returns for the first quarter of 1995, which clearly indicated the extent of Koba's growing, unpaid tax liability.

During each of the three quarters described above, Koba, under the direction of Johnson and Morrison, continued to pay creditors other than the IRS. Johnson Depo. at 50–51.

### D. *The Present Suit*

In 1995, Johnson overpaid his personal income taxes in the amount of $18,590 and filed a complaint in this Court, alleging that the IRS, after applying $3,154.50 of the overpayment to satisfy a tax debt owed by the plaintiff from 1993, wrongfully applied the remaining $15,435.50 to the withholding taxes owed by Koba. The United States filed a counterclaim, seeking judgment on the plaintiff's liability for the withholding taxes still unpaid.

The IRS contends that, as a matter of law, the plaintiff was a responsible person within the meaning of 26 U.S.C. § 6672 (2001). Moreover, the Government claims that the plaintiff's conduct in the last two quarters of 1994 and the first quarter of 1995 amounted to willful failure to pay withholding taxes. Primarily, the Government contends that the plaintiff had actual knowledge of, and control over, Koba's finances, and that he knew of the tax deficiency but recklessly failed to insure that the United States was paid before other creditors. As evidence of willfulness, the Government points out that Johnson received actual notice of the deficiency, initiated further contact with the IRS, set up payment plans, supervised Morrison's compliance with the plans (either personally or through in-house counsel), and, at the end of each quarter, signed corporate tax returns which indicated that Koba had not paid its withholding taxes.

The plaintiff, however, argues that there is a genuine controversy as to whether his conduct amounted to "willfulness" as required under section 6672. The plaintiff argues that a reasonable jury could conclude that his complete delegation of financial responsibility to Morrison in July of 1994, and his belief that Morrison was paying withholding taxes and complying with the October Plan, rendered his conduct non-willful, and, thus, not in violation of section 6672.

Moreover, the plaintiff contends that even if he is found liable, the amount of his liability should be reduced for three reasons. First, after Koba filed for bankruptcy, the IRS asserted a claim in the amount of $1,135,143, secured by real estate, a motor vehicle, and other collateral. Johnson argues that if the present action against him is successful, and if the claim

against Koba's bankruptcy estate is valid, Johnson's personal liability under section 6672 must be reduced accordingly. Second, Johnson argues that the United States failed to pay Koba $100,000 owed under various government contracts. According to Johnson, the government withheld these funds, at least in part, because of the tax liability that the IRS now seeks to collect from Johnson. Finally, Johnson argues that, after Koba filed for Chapter 11 bankruptcy, and subsequently converted that claim to Chapter 7 bankruptcy, the bankruptcy trustee had the statutory obligation "to collect and reduce to money the property of the estate for which the trustee serves," 11 U.S.C. § 704(1) (2001), and then to make a distribution of those funds to creditors. *Id.* § 726. Johnson points out that the IRS has priority in such proceedings for its claims to withholding taxes. *See* 11 U.S.C. § 507(a)(8)(C) (2001). Therefore, Johnson argues that the amount of his liability must be reduced by the amount that the IRS receives from the bankruptcy trustee for Koba's liability.

This case is before the Court on the United States' motion for summary judgment, to which the plaintiff has filed an opposition. The United States has filed a reply, and no oral hearing is necessary. Local Rule 105.6 (D.Md.). For the reasons set forth in the opinion below, this Court, by separate Order, will GRANT the Defendant's Motion for Summary Judgment.

## II. *DISCUSSION*

### A. *Standard for Summary Judgment*

The moving party has the initial responsibility of informing the Court of the basis for the belief that summary judgment is warranted. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir.1987). Once a motion for summary judgment is made and supported, the nonmoving party "may not rest upon the mere allegations or denials of [that] party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court will grant summary judgment if there is "no genuine issue as to any material fact." Fed. R.Civ.P. 56(c). A fact is material only if, when applied to the substantive law, the fact affects the outcome of the suit. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. While the Court may not weigh the evidence, it must determine whether there is a genuine issue for trial. As the Supreme Court stated in *Anderson,* "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252, 106 S.Ct. 2505.

### B. *An Employer's Liability Under Section 6672*

Under 26 U.S.C. §§ 3102 & 3402 (2001), an employer is required to withhold federal income and social security taxes from the wages paid to its employees. These funds are held in trust for the United States, and the employer is required to report the amount on its quarterly payroll tax return. 26 U.S.C. § 7501 (2001); Treasury Regulations on Employment Taxes § 31.6011(a)–4(a)(1). It is important to note, however, that the employer is liable for the taxes from the moment the wages are paid. *See, e.g., Thomsen v. United States,* 887 F.2d 12, 14 (1st Cir. 1989). "The 'trust fund taxes' are for the exclusive use of the Government and are not to be used to pay the employer's business expenses, including salaries, or for

any other purpose." *Gephart v. United States,* 818 F.2d 469, 472 (6th Cir.1987).

In addition to a corporate employer's liability, its officers and agents who are responsible for collecting and paying the withheld taxes may incur personal liability for unpaid payroll taxes. 26 U.S.C. § 6672 (2001). Section 6672 provides, in pertinent part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

*Id.* § 6672(a).

Only certain parties can be held personally liable, though, and then only for certain conduct: "(1) the party assessed must be a person required to collect, truthfully account for and pay over the tax, referred to as a 'responsible person'; and (2) the responsible person must have willfully failed to insure that the withholding taxes were paid." *O'Connor v. United States,* 956 F.2d 48, 50 (4th Cir.1992) (citing *United States v. Pomponio,* 635 F.2d 293 (4th Cir.1980)).

### 1. *"Responsible Person"*

The primary inquiry in determining whether a party is a "responsible person" under section 6672 is whether the party "so 'participate[d] in decisions concerning payment of creditors and disbursement of funds' that he effectively had the authority—and hence a duty—to ensure payment of the corporation's payroll taxes." *Plett v. United States,* 185 F.3d 216, 219 (4th Cir.1999) (quoting *O'Connor,* 956 F.2d at 51). "Stated differently, the 'crucial inqui-

ry is whether the person had the 'effective power' to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed.'" *Id.* (quoting *Barnett v. Internal Revenue Serv.,* 988 F.2d 1449, 1454 (5th Cir.1993)). Such authority "is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursement of funds." *O'Connor,* 956 F.2d at 51 (citing *Monday v. United States,* 421 F.2d 1210 (7th Cir. 1970)). Other factors considered in making this determination include whether the party:

> (1) served as an officer of the company or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees.

*Plett,* 185 F.3d at 219 (citing *O'Connor,* 956 F.2d at 51; *United States v. Landau,* 155 F.3d 93, 100-01 (2d Cir.1998); *Barnett,* 988 F.2d at 1455).

It is clear that the plaintiff was a "responsible person" under section 6672. He had decisionmaking authority over the finances of the corporation. He was Koba's president, chairman of the board of directors, and majority shareholder. He was actively involved in the day-to-day management of the corporation, meeting with his vice presidents weekly and hiring and firing key employees. He also enjoyed, and indeed exercised, the ability to determine which creditors were paid and at what time, and he had signature authority over the corporate checking account. Moreover, Johnson personally negotiated

with the IRS and submitted payment plans on behalf of the corporation. He also personally supervised, or directed others to supervise, Morrison's compliance with these payment plans.

██ The mere fact that Johnson hired Morrison to lead the finance department does not relieve him of the "responsible person" designation. More than one person within a corporation can be a "responsible person" under section 6672, *O'Connor*, 956 F.2d at 50, and it is a "well established and fundamental principle that a person cannot avoid the duty to assure that withholding taxes are paid to the government simply by delegating the responsibility to pay those taxes to a subordinate." *Szego v. Internal Revenue Serv.*, 1994 WL 408191 (D.Md.) (citing *Purcell v. United States*, 1 F.3d 932, 937 (9th Cir. 1993); *Barnett*, 988 F.2d at 1454; *George v. United States*, 819 F.2d 1008, 1012 (11th Cir.1987)).

The plaintiff maintained supervisory control over Morrison and had the power at all times to fire him or personally ensure that the corporation pay the debts owed. Even if Johnson delegated some or all of his financial responsibilities, "[d]elegation of the actual preparation of tax returns, the keeping of records, the payment of wages and the withholding of taxes does not reduce an otherwise responsible person to the status of one not responsible." *Peek v. United States*, 1991 WL 82842 at *4 (D.Md.) (quoting *Thomsen*, 887 F.2d at 17, in turn quoting *Grover v. United States*, 691 F.Supp. 1572, 1576 (D.Mass.1988)).

### 2. *Willful Failure to Pay*

██ In failing to pay withholding taxes, a responsible person's conduct is "willful" if he had "knowledge of nonpayment or reckless disregard of whether the payments were being made." *Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir.

1992); *see also Plett*, 185 F.3d at 219. "The 'intentional preference of other creditors' over the United States is 'sufficient to establish the element of willfulness' under section 6672(a)." *Turpin*, 970 F.2d at 1347. (quoting *Pomponio*, 635 F.2d at 298 n. 5). "The responsible person must know of or recklessly disregard the existence of an unpaid deficiency ... for there to be an intentional preference." *Id.*

The plaintiff is an extremely well educated businessman, who built and maintained a productive business for over twenty-six years. He negotiated his company through delinquency problems with the IRS on a number of occasions, and he admittedly knew of the importance of honoring the obligation to pay withholding taxes. Johnson had, at times, primary responsibility for Koba's finances, and he knew of his company's tendency to fall behind on payroll taxes, and that Morrison would have to manage this recurring problem. He took steps to supervise Morrison, met with him regularly to discuss Koba's financial affairs, and was provided with several accountings of checks written on behalf of the corporation.

Each of these above-described circumstances existed during each of the three quarters at issue in this case. It is clear from these circumstances generally—and the occurrences of each quarter in particular—that Johnson acted with reckless disregard of whether Koba was honoring its tax obligations. *See Turpin*, 970 F.2d at 1347. Therefore, the Government is entitled to judgment as a matter of law as to the "willfulness" element of section 6672.

#### a. *The Third Quarter of 1994*

During the third quarter of 1994, Johnson supervised and trained Morrison as vice president of finance. Morrison continually provided Johnson with documents that listed checks that he had written on

behalf of the corporation, and Johnson met with Morrison and other vice presidents every week. Although Morrison never mentioned the company's tax problems in these meetings or reports, Johnson made little effort to ensure that his new vice president was managing Koba's often-problematic payroll taxes. After Johnson discovered in October that taxes from the prior quarter had not been paid, Koba continued to pay creditors other than the United States. Upon learning of the deficiency, Johnson assumed primary responsibility by personally negotiating a payment plan with the IRS.

Johnson, however, failed to ensure that his company followed the plan: he instructed Morrison to abide by the negotiated terms and monitored the payments for a short period of time, but he soon withdrew his supervision and turned the plan over to Morrison, who, Johnson believed, had caused the deficiency in the first place. Moreover, Johnson signed Koba's corporate tax return for the third quarter, which on its face indicated the extent to which Koba was delinquent for the third quarter's payroll taxes. While he might not have known whether Morrison was making the payments, his failure to inform himself, alongside his failure to exercise his authority as president and chairman of the board to ensure that the IRS was satisfied, amounts to a reckless failure to pay withholding taxes akin to willful blindness.

### b. The Fourth Quarter of 1994

Johnson discovered that Koba was severely delinquent in withholding taxes in October, during the fourth quarter of 1994. After finding out about the deficiency and personally arranging a payment plan with the IRS, Johnson contends that he left the entire business of making the payments to Morrison. Johnson was reckless, at best, in his monitoring of Morrison, and, despite his knowledge of the continuing existence of the problem, at no time did Johnson: (1) request documentation that indicated that Morrison was paying the taxes; (2) contact the IRS to ensure that it was satisfied with Koba's compliance with the plan; (3) fire and replace Morrison for having neglected to pay the taxes in the first place; or (4) simply write checks on Koba's behalf to ensure compliance with the plan.

Moreover, Johnson reviewed and signed Koba's corporate tax return for the fourth quarter, which indicated on its face the growing amount of Koba's unpaid withholding taxes. Again, Johnson's failure to follow up on the plan that he had arranged with the IRS, and his continued ignorance of Morrison's activities, amounted to a reckless disregard for the existence of the unpaid deficiency.

### c. The First Quarter of 1995

Finally, by the first quarter of 1995, Johnson was undoubtedly aware of Koba's growing problem with the IRS. In January 1995, Johnson learned of the IRS's intent to levy, and, again, personally negotiated a plan with the IRS to keep Koba afloat. Knowing by now of Morrison's complete inability to follow the terms of the October Plan, Johnson appointed Robinson, the company's in-house counsel, to supervise Morrison's compliance with this new plan. Again, however, Johnson did not adequately supervise Morrison or personally ensure that the plan was followed. Johnson chose not to exercise his power as president and chairman of the board to fire Morrison or otherwise to actively ensure that Koba's taxes were paid. He chose instead to leave the resolution of the problem in the hands of two of his subordinates, one of whom was demonstrably unreliable. Moreover, as in the two prior quarters, Johnson again reviewed and signed Koba's corporate tax return for the first quarter

of 1995, which clearly indicated a growing, unpaid tax deficiency.

It is clear from the evidence that Morrison's incompetence was a direct cause of Koba's continued failure to remit withholding taxes. It is equally clear, however, that Johnson knew of and recklessly disregarded the existence of the unpaid deficiency. In opposition to summary judgment, the plaintiff attempts to create a genuine dispute of material fact by contending that he did not know whether Morrison was paying the tax deficiency. Even assuming that he lacked actual knowledge of Morrison's conduct, there is no question that Johnson's continued failure to take action on Koba's behalf exceeded the bounds of mere negligence and crossed over the line into the territory of willfulness.

Johnson had actual knowledge of Koba's tax problems, and he directly involved himself in solving those problems by personally arranging two payment plans with the IRS. Johnson then attempted to delegate the duty to comply with the plans to the very man who had caused the deficiency and failed to supervise him adequately under both plans. As an experienced businessman with knowledge of Koba's history of deficient taxes and the seriousness of honoring tax obligations, Johnson was, as a matter of law, willful in his failure to pay withholding taxes under section 6672.

C. *The IRS's Right to Single Recovery Under Section 6672*

█ Finally, the plaintiff claims that, if he were found liable under section 6672, there would be a triable issue as to the amount owed to the IRS. The plaintiff argues that the IRS has priority in Koba's bankruptcy proceedings and has asserted a secured claim in the amount of $1,135,143. Therefore, the plaintiff argues, a factual issue exists as to how much Johnson would owe if found liable.

This is not a factual issue that will prevent summary judgment; the amount of withholding taxes owed to the IRS is not in dispute. All that Johnson seems to contest is whether the IRS can attempt to collect those taxes from Koba's bankruptcy estate as well as from him personally. As the Fourth Circuit recognized in *Pomponio*, 635 F.2d at 298 (quoting *Kelly v. Lethert*, 362 F.2d 629, 635 (8th Cir.1966)), "[t]he result of Section 6672 is thus to make the responsible officers of the corporation, as well as the corporation itself, equally liable as co-debtors to the Government, and the Government may proceed against either in the order best suited in its judgment to collect the unpaid tax." So, it is clear that the IRS may attempt to satisfy Koba's debt through actions against Johnson or Koba.

The plaintiff also intimates concern that the IRS might attempt to obtain some sort of double recovery from both Koba and Johnson in excess of the established amount of withholding taxes due. This was a concern addressed in *Pomponio*, *supra*, as well. In that case, the Fourth Circuit allayed the fears of double recovery by acknowledging the IRS's established administrative policy to collect the total penalty under section 6672 only once. *See id.* at 298 n. 6 (citing *United States v. Sotelo*, 436 U.S. 268, 279–80 n. 12, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978)). The court also explained that, even absent the internal IRS policy, the agency was not entitled to double recovery under section 6672. *Id.* at 298–99, 98 S.Ct. 1795 (quoting *Brown v. United States*, 591 F.2d 1136, 1142–43 (5th Cir.1979) (citing *Kelly v. Lethert*, 362 F.2d 629, 635 (8th Cir.1966); *Newsome v. United States*, 431 F.2d 742, 745 (5th Cir. 1970))). Finally, the *Pomponio* court explained that any lingering concerns of double recovery could easily be extinguished by a carefully drafted judgment order of the district court. *Id.* at 299. In the case now before the Court, the mere fact that

the IRS is attempting to secure a second source for the payment of taxes owed does not necessarily mean that it will attempt to exhaust both sources in excess of the debt. If it attempts to do so in the future, not only will it be in violation of its own policies and the law of the Fourth Circuit, but it also will find itself in direct violation of the separate Order that this Court will issue pursuant to this Opinion.

Judgment in this case entitles the IRS to recovery of the full amount of Koba's withholding taxes. To the extent that the IRS collects on the fixed debt of $887,726.78 (plus interest and statutory penalties accumulated to this date) pursuant to Koba's bankruptcy proceedings, the amount owed under this judgment will be reduced. If the IRS collects beyond this amount, which an upcoming Order will prohibit, Johnson is free to file a separate action for injunctive relief. With the goal of preventing further conflict, the upcoming Order will obligate the IRS to report to this Court every 180 days concerning the status of its collection efforts against Koba in bankruptcy and against the plaintiff personally.

As the original debt of $887,726.78 is now undoubtedly different due to penalties and interest, it would be helpful if counsel could confer and agree upon a liquidated amount that includes such penalties and interest as of a date certain—January 22, 2002. Responses should be faxed to the chambers of the Court (410–962–2686) as soon as possible, but not later than noon on January 22. Upon receiving an agreed upon amount, the Court will issue an Order pursuant to the terms of this Opinion, GRANTING the Defendant's Motion for Summary Judgment and CLOSING this case.