Jeffrey L. JOHNSON, Plaintiff,

v.

UNITED STATES of America, Defendant/Third–Party Plaintiff,

v.

Phillip Wright, Third–Party Defendant.

No. CIV.A. L–06–350.

United States District Court, D. Maryland.

Feb. 19, 2009.

Jeffrey L. Johnson, Salisbury, MD, pro se.

Ann Elizabeth Nash, John Joseph Locurto, III, U.S. Department of Justice, Washington, DC, Rod J. Rosenstein, Office of the United States Attorney, Baltimore, MD, for Defendant/Third–Party Plaintiff.

Phillip Wright, Columbia, MD, pro se.

### MEMORANDUM

BENSON EVERETT LEGG, Chief Judge.

Plaintiff Jeffrey L. Johnson ("Johnson") tiled this action to challenge his personal liability for failing to ensure that his former employer—Information Systems Solutions International, Inc. ("ISSI")—remitted certain federal taxes it was required to withhold from employee wages. The United States filed a counterclaim against Johnson, impleaded third-party defendant Phillip Wright ("Wright"), and filed a claim against Wright. In its claim against Wright, the government contends that he should be held personally liable for ISSI's

failure to pay federal income and social security taxes during the fourth quarter of 1998 and the first three quarters of 1999.

Now pending are cross-motions for summary judgment filed by the United States and Wright. Because the issues are adequately addressed in the briefs, no hearing is necessary. *See* Local Rule 105.6 (D.Md. 2008). For the reasons stated below, the Court will, by separate order: (i) grant the United States' Motion for Summary Judgment, (ii) deny Wright's Cross Motion for Summary Judgment, and (iii) order that Wright pay the United States $1,077,366.37, plus interest and other statutory additions accruing from October 15, 2007.

## I. FACTUAL BACKGROUND

### A. Wright's Employment and Responsibilities With ISSI

Prior to its dissolution, ISSI was a government contracting and consulting firm specializing in data review and computer systems development. Wright began working for the company in 1993. His employment ended in 2000, when the company shut down. While working for ISSI, Wright served as both CEO and President. He was also president of the board of directors, as well as the company's majority stockholder—holding a sixty percent controlling interest from 1993 through 2000.

As president, CEO, board member, and controlling shareholder. Wright had extensive authority over ISSI's business affairs. That authority included the power to (1) hire, fire, and manage employees; (2) authorize payment of bills; (3) deal with major customers, negotiate and enter contracts, and make purchases; (4) negotiate, sign for, and guarantee corporate loans; (5) open and close corporate bank accounts; (6) sign checks, including payroll checks; (7) make and authorize bank deposits and federal payroll tax deposits; (8) review ISSI's financial information, including the company's books and records, federal income and payroll returns, accounts payable records, and records reflecting the company's payroll tax deposits and liabilities; and (9) determine the company's overall financial policies.[1]

### B. ISSI's Failure to Remit Federal Taxes

ISSI experienced cash flow problems throughout 1998 and 1999,[2] During the fourth quarter of 1998 and first three quarters of 1999, the company failed to remit the federal income and social security taxes it was required to withhold from employee paychecks. In his deposition, Wright testified that he learned of ISSI's failure to pay the taxes during the summer of 2000. Although Wright was aware of the company's failure to pay the taxes by the summer of 2000. ISSI continued to pay creditors other than the United States.

### C. Wright's Interactions With the Internal Revenue Service and Department of Justice

Given ISSI's failure to pay certain federal taxes, the Internal Revenue Service ("IRS") applied the trust fund penalty, found in 26 U.S.C. § 6672, and assessed a penalty of $1,077,366.37—including accrued interest as of October 15, 2007—

---

[1]. Wright's duties also included presiding over ISSI's senior management team, which included Johnson, the company's director of finance. The finance department—which Johnson oversaw—was responsible for handling accounts, financial reporting, payroll, and tax matters.

[2]. These problems ultimately led to the company's shutdown in late 2000.

against Wright.[3] The costs associated with each tax period are as follows:

| Tax Period | Assessment Date | Assessment | Balance Due (as of 10/15/07) |
|---|---|---|---|
| Fourth Quarter, 1998 | 12/26/2001 | $ 99,991.73 | $115,697.46 |
| First Quarter, 1999 | 12/26/2001 | $540,856.54 | $749,136.22 |
| Second Quarter, 1999 | 12/26/2001 | $ 85,523.80 | $121,561.65 |
| Third Quarter, 1999 | 12/26/2001 | $ 63,997.39 | $ 90,971.04 |

In response to that penalty Wright entered into settlement negotiations with the IRS. On or about June 19, 2007, the IRS accepted Wright's amended Offer of Compromise. Shortly after receiving the IRS's acceptance, however, Wright was served with the instant Third Party Complaint, filed by the Department of Justice ("DOJ"). The DOJ informed Wright that his case had been transferred to its authority on August 4, 2006 and that, as a result, the IRS lacked the authority to accept his amended Offer of Compromise. The DOJ rescinded the IRS's acceptance and proceeded with the current action against Wright.

Wright contends that the government neither notified him of the transfer to the DOJ nor provided any documentation evidencing it. Moreover, he alleges that the government failed to notify him that the DOJ and Johnson were engaged in the instant litigation. Finally, Wright notes that—despite the DOJ's withdrawal of his amended Offer of Compromise—the government deposited a payment that Wright made pursuant to that settlement agreement. The deposit occurred after the DOJ purported to rescind the IRS's acceptance.

The parties have now filed cross-motions for summary judgment. The government contends that Wright should he held liable, under 26 U.S.C. § 6672, for ISSI's failure to remit federal income and social security taxes, and seeks to recover the $1,077,366.37 penalty—plus accrued interest—assessed against him. Wright argues that the government should be equitably estopped from rescinding the agreement reached between himself and the IRS He represents that he "stands ready, willing, and able to fully perform the agreement entered into with the IRS and pay the amounts due under that agreement."

## II. STANDARD OF REVIEW

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *see also Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

## III. ANALYSIS

### A. Wright's Liability Under § 6672

■ The internal revenue code requires employers to withhold federal in-

---

**3.** The government had provided certified records of the trust fund recovery penalty assessments against and balances due from Wright.

These records are self-authenticating and require no extrinsic evidentiary support. *See* Fed. R. Ev. 902.

come and social security taxes from their employees' wages. *See* 26 U.S.C. §§ 3402(a), 3102(a). Because the employer holds these taxes as "special funds in trust for the United States," they are commonly referred to as "trust fund taxes." *See Plett v. U.S.*, 185 F.3d 216, 218 (4th Cir.1999). While employers remain liable for failing to remit trust fund taxes, the Internal Revenue Code also imposes personal liability—in an amount equal to the unpaid taxes .. upon officers or employees who (1) are responsible for collecting, accounting for, and remitting payroll taxes, and (2) willfully fail to do so. *Id.* (citing 26 U.S.C. §§ 6672(a), 6671(b)).

■■■ Further, it is "well established in tax law that an assessment is entitled to a legal presumption of correctness." *U.S. v. Fior D'Italia, Inc.*, 536 U.S. 238, 242, 122 S.Ct. 2117, 153 L.Ed.2d 280 (2002). In other words, in the context of § 6672, an IRS determination of tax liability is presumptively correct and the burden is placed on the taxpayer to establish that the IRS's determination was erroneous. *See U.S. v. Pomponio*, 635 F.2d 293, 296 (4th Cir.1980) In order to show that an IRS determination was erroneous, a taxpayer must demonstrate either (1) that be was not a responsible person, or (2) that his failure to pay the taxes was not willful. *Id.* Here, Wright was responsible for remitting payroll taxes and willfully failed to do so. Accordingly, the Court finds that Wright is liable for ISSI's failure to pay federal income and social security taxes.

### 1. Wright Was a Responsible Person

■■■ The crucial inquiry in determining responsibility under § 6672 is whether an individual "had the effective power to pay taxes that is, whether he had the actual authority or ability ... to pay taxes owed" *Plett*, 185 F.3d at 219. In providing guidance on this issue, the Fourth Circuit has delineated a number of factors that are "indicia of the requisite authority." These factors include whether the employee: (1) served as an officer of the company, or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees. *See Hagen v. U.S.*, 485 F.Supp.2d 622, 628 (D.Md.2007) (quoting *Plett*, 185 F.3d at 219). While the test contemplates that the responsible person will have significant control over the corporation's finances, exclusive control is unnecessary. *Id.*

Applying the above factors to the present case, it is apparent that Wright was a responsible party for the purpose of establishing § 6672 liability. Wright served as ISSI's president and CEO, as well as president of its board of directors. He had the authority to lure and fire employees, authorize the payment of bills, sign checks, and authorize federal payroll tax deposits. Furthermore, Wright was empowered to negotiate and enter contracts negotiate, sign for, and guarantee corporate loans; and open and close corporate bank accounts. Finally, he had the general ability to review ISSI's financial information, including records reflecting the company's payroll tax deposits and liabilities. In short, Wright played a substantial role in determining ISSI's overall financial policies and was a responsible party under § 6672.[4]

---

4. It should be noted that Wright's reliance on Johnson to run the finance department does not relieve him of the "responsible person" designation. More than one individual can be a responsible person under § 6672, and it is a "well established and fundamental princi-

### 2. Wright Willfully Failed to Remit ISSI's Taxes

■ When considering this requirement under § 6672, the Fourth Circuit has held that "the failure to pay trust fund taxes cannot he willful unless there is either 'knowledge of nonpayment or reckless disregard for whether the payments were being made.'" *Hagen*, 485 F.Supp.2d at 630 (quoting *Turpin v. U.S.*, 970 F.2d 1344, 1347 (4th Cir.1992)). One principal way of demonstrating willfulness is to "show that the responsible person made a voluntary, conscious and intentional decision to prefer other creditors over the Government." *Id.* (internal citation and quotation marks omitted); *see also Johnson v. U.S.*, 203 F.Supp.2d 416, 423 (D.Md.2002) ("The 'intentional preference of other creditors' over the United States is 'sufficient to establish the element of willfulness' under section 6672") (quoting *Turpin*, 970 F.2d at 1347). Even if an individual bears no evil motive—*i.e.* an intent to defraud the IRS—willfulness is nonetheless established by the intentional act of paying other creditors before the United States. *See Bell v. U.S.*, 355 F.3d 387, 393 (6th Cir.2004).

Here, Wright made the conscious decision to preference other creditors over the United States Once he and ISSI's other managers learned of the tax debt, they chose to split funds between the tax debt and general operating expenses in the hope of generating enough revenue to both keep the business afloat and pay off the taxes. While this was certainly an admirable intent, the mere fact that Wright chose to pay other creditors prior to settling ISSI's trust fund tax deficiency demonstrates that he willfully failed to remit the federal taxes. *See Hagen.*, 485 F.Supp.2d at 630. Thus, under § 6672, Wright is personally liable for the company's failure to pay those taxes. Still to be decided, however, is whether the United States should be equitably estopped from resending the settlement agreement reached by Wright and the IRS.

### B. the Government is Not Equitably Estopped from Rescinding the Settlement Agreement Reached by Wright and the IRS

■ In his cross-motion for summary judgment. Wright argues that the Court should rely upon the doctrine of equitable estoppel to enforce the compromise Wright entered into with the IRS. That doctrine permits "'a person's act, conduct, or silence when it is his duty to speak' to preclude him from asserting a right he otherwise would have bad against another who relied on that voluntary action." *Varat Enter., Inc.*, 81 F.3d 1310, 1317 (4th Cir.1996) (citing *Black's Law Dictionary*). In Maryland, equitable estoppel is comprised of three basic elements (1) a voluntary misrepresentation of one party, (2) that is relied upon by the other party, (3) to the other party's detriment. *See Chawla v. Transamerica Occidental Life Ins. Co.*, 440 F.3d 639, 646 (4th Cir. 2006).

■ Wright contends that this Court should require the government to enforce the settlement agreement because he detrimentally relied on the IRS's misrepresentation that it had the authority to settle his case. What Wright neglects to consider, however, is that an additional element

---

ple that a person cannot avoid the duty to assure that withholding taxes are paid to the government simply by delegating the responsibility to pay those taxes to a subordinate." *Johnson v. U.S.*, 203 F.Supp.2d 416, 423

(D.Md.2002) (internal citation and quotation marks omitted). Indeed, "§ 6672 applies to all responsible persons, and not *just the most responsible* person." *Hagen v. U.S.*, 485 F.Supp.2d 622, 628 (D.Md.2007).

"must be shown before estoppel against the government [may] even be contemplated." *See U.S. v. Pepperman,* 976 F.2d 123, 131 (3d Cir.1992); *see also Heckler v. Cmty. Health Servs. Of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (noting that "it is well settled that the Government may not be estopped on the same terms as any other litigant"). In particular, a party must demonstrate that the government engaged in affirmative misconduct—as opposed to negligently failing to take a certain action—before a court may apply the doctrine of equitable estoppel. *See Pepperman,* 976 F.2d at 131.

■ Here, the government did not engage in affirmative misconduct. While its failure to notify Wright that his case had been transferred to the DOJ—or provide him with documentation evidencing that transfer—represents a material omission, it does not rise to the level of affirmative misconduct. *See In re: Dutch Masters Meats, Inc.,* 182 B.R. 405, 411 (Bankr. M.D.Pa.1995) (finding that an IRS agent's failure to warn a company that he did not have authority to bind the Service did not represent affirmative misconduct); *see also Jordan v. U.S.,* 77 Fed.Cl. 565, 569 (Fed.Cl.2007) (finding that "the risk of assessing the scope of a government agent's authority is squarely on the private party"). As a result, Wright cannot estopp the government from rescinding the settlement agreement reached by himself and the IRS.[5]

■ Moreover, in the Fourth Circuit, a claimant may not rely upon equitable estoppel to require the United States to take action in violation of a federal statute. *See Estate of Hugh S. Hunt v. U.S.,* 103 Fed. Appx. 475, 477 (4th Cir.2004). Applied to the instant case, this rule means that Wright may not estopp the government from withdrawing the IRS's settlement agreement. Because Wright's case was referred to the DOJ prior to his settlement with the IRS, enforcing the settlement would run afoul of the statutory provision authorizing the IRS to compromise tax cases only prior to—not after—their transfer to the DOJ. *See* 26 U.S.C. § 7122; *see also Brooks v. U.S.,* 833 F.2d 1136, 1145 (4th Cir.1987) (holding that "Section 7122 is the exclusive method by which tax cases may be compromised"). Requiring the government to accept the settlement reached between Wright and the IRS would contravene a federal statute, be contrary to Fourth Circuit law, and cannot be permitted in this case.

Because Wright cannot prevent the government from rescinding his settlement agreement with the IRS, he is hereby required to pay the full assessed penalty of $1,077,366.37, plus interest and other statutory additions accruing from October 15, 2007.

## IV. CONCLUSION

For the foregoing reasons, the Court will, by separate order: (i) grant the United States' Motion for Summary Judgment, (ii) deny Wright's Cross Motion for Sum-

---

**5.** Because the Court finds that the government has not engaged in affirmative misconduct, there is no need to analyze the remaining three elements of an equitable estoppel claim. Nonetheless, it should be noted that Wright would likely have a difficult time establishing detrimental reliance. Wright had no legal right to a settlement of his tax liability; as such, the DOJ's decision to rescind the settlement offer did not deprive Wright of anything to which he was statutorily entitled. Furthermore, Wright's partial payment under the settlement does not rise to the level of detrimental reliance. *See In re Dutch Masters Meats, Inc.,* 182 B.R. 405, 411 (Bankr.M.D.Pa.1995)(finding that "a single $14,000 payment does not represent detriment sufficient to require equitable relief").

mary Judgment, and (iii) order that Wright pay the United States $1,077,366.37, plus interest and other statutory additions accruing from October 15, 2007.[6]

---

**6.** The Court assumes that the payment Wright made pursuant to the settlement agreement reached between himself and the IRS will be deducted from this figure.