**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ESTATE OF HUGH S. HUNT; ANN
HERERRA, Administrator,
                    *Plaintiffs-Appellees,*

v.

UNITED STATES OF AMERICA,
                    *Defendant-Appellant,*

and                              No. 02-1896

WILSON C. MCCARTHY, IRS Revenue
Agent; THEODORE E. SHAUGHNESSY;
C. RANDALL; JOHN DOE; RICHARD
ROE; DAVID POE; OTHER UNKNOWN
NAMED INTERNAL REVENUE AGENTS,
                    *Defendants.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CA-94-3553-JFM)

Submitted: May 18, 2004

Decided: June 30, 2004

Before WILKINS, Chief Circuit Judge, WILLIAMS, Circuit Judge,
and David R. HANSEN, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Reversed and remanded with instructions by unpublished per curiam
opinion.

## COUNSEL

Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland; Eileen J. O'Connor, Assistant Attorney General, Jonathan S. Cohen, Robert J. Branman, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Anthony J. Rollins, John P. Tyler, JACKSON & TYLER, L.L.P., Atlanta, Georgia; Hugh S. Hunt, Atlanta, Georgia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

The Government appeals from the district court's grant of summary judgment in favor of Hugh S. Hunt[1] on his claim for interest on a 1982 tax refund. Although Hunt is not entitled to interest under the applicable statute, the district court held that the Internal Revenue Service (IRS) was equitably estopped from denying payment of interest on the 1982 refund. As discussed below, a claimant may not use equitable estoppel to require the Government to make payments out of the Federal Treasury that are not authorized by statute. *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990) (*Richmond*). Accordingly, we reverse the grant of summary judgment and remand with instructions to enter summary judgment for the Government.

### I.

On August 20, 1991, the IRS issued notices of income tax deficiencies to Hunt for the tax years 1983 and 1985. In November of that year, Hunt challenged these deficiencies in the United States Tax

---

[1]Since the district court entered judgment in this case, Mr. Hunt has died, and his estate has been substituted as a party.

Court. Immediately prior to trial in the Tax Court, the parties settled the lawsuit. As part of the settlement, the IRS conceded that Hunt had properly reported a $1.5 million net operating loss for tax year 1985 (the 1985 NOL). During settlement negotiations, Hunt indicated that he intended to carryback the 1985 NOL to offset his tax liability for 1982. Specifically, Hunt proposed that the following language be included in the settlement: "Petitioner's 1985 NOL . . . shall be allowed to be carried back to the 1982 tax year to eliminate all 1982 income tax liability of Petitioner for 1982." (J.A. at 42 (Hunt's draft of settlement language).) On December 1, 1993, the IRS attorney involved in the settlement negotiations provided Hunt with a calculation prepared by a Revenue Agent that reflected a net refund for 1982 of $57,571 based on the carryback of the 1985 NOL. This calculation did not mention or calculate interest.

Pursuant to the parties' settlement, a decision was filed in the Tax Court on December 20, 1993, holding that Hunt had an overpayment for tax year 1983 and no deficiency for tax year 1985. The Tax Court decision did not mention the 1982 tax year at all and did not incorporate Hunt's draft settlement language.[2] After the Tax Court decision was entered, the IRS sent Hunt a check for the 1983 overpayment, which he received on January 15, 1994. Hunt contacted the IRS to find out why he had not received the refund for the 1982 tax year and was advised to file an amended return for 1982 to claim the NOL carryback. On March 12, 1994, Hunt filed an amended tax return for 1982 claiming a refund for 1982 based on carrying back the 1985 NOL. The IRS paid the refund on March 28, 1994. The IRS did not pay Hunt any interest related to the 1982 refund. Hunt made further inquiries with the IRS to determine why his refund was not the

---

[2]We note that because Hunt did not receive a notice of deficiency with respect to the 1982 tax year, the Tax Court did not have jurisdiction over that tax year. *See* 26 U.S.C.A. § 6213(a) (West 2000) ("The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition."); *Abrams v. C.I.R.*, 787 F.2d 939, 941 (4th Cir. 1986) ("The United States Tax Court is a court of limited jurisdiction. 26 U.S.C. § 7442. A notice of deficiency is a prerequisite of tax court jurisdiction.").

amount that he expected it to be. On April 1, 1994, three months after the settlement was finalized, the Revenue Agent prepared another computation for Hunt to try to resolve Hunt's concerns. This computation included a calculation of interest on the 1982 refund of approximately $55,000.

The IRS refused to pay interest on the 1982 refund because, under the Internal Revenue Code (I.R.C.), no interest is due on a refund claim like Hunt's if the refund is paid within 45 days, and Hunt's claim was paid well within 45 days. *See* 26 U.S.C.A. § 6611(e) (West 2002).

Hunt then filed a complaint in the United States District Court for the District of Maryland seeking, among other things, interest on the 1982 refund. All of the other issues that Hunt raised in his complaint have been resolved, and the interest on the 1982 refund is the only issue in this appeal.

The district court entered summary judgment for Hunt, holding that the IRS was equitably estopped from denying him payment of interest on the 1982 refund. According to the district court, Hunt made it clear that he believed that he would receive interest on the 1982 refund, and the IRS finalized the settlement for the 1983 and 1985 tax years with full knowledge of Hunt's belief. The court held, "Hunt's reasonable reliance on the fact that he would be paid interest on the 1982 refund, the IRS's knowledge of that reliance, and its intentional finalization of the Tax Court case provide a classic case for the intervention of a court of equity." (J.A. at 238.) The district court found that although Duvall, Bryant, and others who participated in Hunt's settlement negotiations gave him erroneous advice, they all acted in subjective good faith.

## II.

"We review the entry of summary judgment in favor of Appellees de novo." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986). The Government argues that the district court erred in applying equitable estoppel because the Appropriations Clause of the Constitution prevents the payment of public funds in a manner not authorized by Congress. *See Richmond*, 496 U.S. at 430.

In *Richmond*, the Court held that a claimant may not use equitable estoppel to require the Government to make payments out of the Federal Treasury that are not authorized by statute. The petitioner in *Richmond* was a retired Navy employee who was receiving a disability annuity. He sought advice from a federal employee about how much money he could earn without jeopardizing his disability annuity and received erroneous oral and written advice concerning that amount. Relying on that advice, he earned more than the maximum allowable salary and lost his disability annuity for six months under the disability annuity statute.

The Supreme Court held that despite the erroneous oral and written advice, equitable estoppel could not lie against the Government to require payment of the disability annuity in contravention of statute because requiring payment in those circumstances would violate the Appropriations Clause. The Appropriations Clause provides that: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. Art. I, § 9, cl. 7. "The whole history and practice with respect to claims against the United States reveals the impossibility of an estoppel claim for money in violation of a statute." *Id.* at 430. "The rationale of the Appropriations Clause is that if individual hardships are to be remedied by payment of Government funds, it must be at the instance of Congress." *Id.* at 434.

The question thus becomes whether payment of interest on Hunt's 1982 refund claim would violate a statute; if so, then equitable estoppel cannot lie against the Government. I.R.C. § 6611(a) provides the rules for calculating interest on overpayments and explains that, in general, "[i]nterest shall be allowed and paid upon any overpayment." Under I.R.C. § 6611(b), interest is generally due from the date of overpayment. Under I.R.C. § 6611(f)(1), an overpayment due to the carryback of a net operating loss is "deemed not to have been made prior to the filing date for the taxable year in which such net operating loss . . . arises." In this case, the net operating loss arose in 1985 and

the filing date for that taxable year was April 15, 1986. Thus, Hunt's overpayment is deemed not to have been made prior to April 15, 1986.

Although Hunt's overpayment is deemed not to have been made prior to April 15, 1986, this does not mean that interest began to accrue on April 15, 1986. I.R.C. § 6611(f)(4)(B) provides for coordination with I.R.C. § 6611(e), which provides that if the IRS pays a refund within 45 days after a return is filed, no interest is due. For the purpose of calculating interest under I.R.C. § 6611(f)(4)(B), an overpayment due to an NOL carryback is treated as an overpayment for the loss year, and the return for the loss year is treated as filed when the claim for such overpayment is filed. Accordingly, pursuant to I.R.C. § 6611(f)(4)(B), for purposes of calculating interest, Hunt's 1982 overpayment is treated as an overpayment for 1985 (the loss year), and the 1985 return is treated as filed when the refund claim for the 1982 overpayment was filed (in this case, March 12, 1994). Thus, because Hunt's refund was paid on March 28, 1994, within 45 days of March 12, 1994, no interest on Hunt's refund claim is allowed under I.R.C. § 6611(e).

Hunt does not dispute this application of I.R.C. § 6611. Instead, he argues that payment of interest on his 1982 overpayment would not violate a statute because "Congress specifically authorized the payment of funds to taxpayers in settlement of claims with the IRS," (Appellee's Br. at 8), and thus, "the Secretary, and through delegation his subordinates, can settle any matter even if the settlement is clearly not in the favor of the IRS and appears to be outside the laws set forth by Congress." (Appellee's Br. at 5.) Although it is true that the IRS can settle claims with taxpayers pursuant to I.R.C. § 7121, the settlement entered by the Tax Court covered only tax years 1983 and 1985 — the years for which there were notices of deficiency issued. Moreover, as the district court correctly recognized, (J.A. at 236-37), settlement agreements under § 7121 must be in writing. *See* I.R.C. § 7121 ("The Secretary is authorized to enter into an agreement *in writing* with any person relating to the liability of such person . . . ." (emphasis added)). Because Hunt has not shown that there was any written settlement agreement related to tax year 1982, he cannot rely on I.R.C. § 7121 to support the payment of interest in violation of a statute.

Accordingly, payment of interest to Hunt would violate a statute, specifically I.R.C. § 6611(e), which provides that "no interest shall be allowed" on overpayments refunded within 45 days after a return is filed. Because Hunt seeks payment of money in violation of a statute, equitable estoppel cannot lie against the Government. *Richmond*, 496 U.S. at 430; *see also Grooms v. Office of Pers. Mmgt.*, 154 F.3d 181, 185 (4th Cir. 1998) (holding that because equitable estoppel cannot require the government to pay out benefits not authorized by Congress, "the government employees' method of handling Grooms' affairs is immaterial to the determination of whether Grooms' cancellation was effective"); *Miller v. United States*, 949 F.2d 708 (4th Cir. 1991) ("[I]t is clear that neither the government, nor a government agency such as the IRS, can be equitably estopped from asserting its legal rights because of the actions of an agent."). The district court thus erred in granting summary judgment to Hunt based on equitable estoppel.

## III.

Because the facts are undisputed and the Government is entitled to judgment as a matter of law, we reverse the grant of summary judgment and remand with instructions to enter summary judgment for the Government.

*REVERSED AND REMANDED WITH INSTRUCTIONS*