**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-5274**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RONALD G. BAILEY,

Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (CR-04-17-A)

---

Submitted: November 20, 2006          Decided: February 8, 2007

---

Before WILKINS, Chief Judge, and TRAXLER and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Michael S. Nachmanoff, Acting Federal Public Defender, Suzanne Little, Assistant Federal Public Defender, Sapna Mirchandani, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Alan Hechtkopf, Gregory Victor Davis, UNITED STATES DEPARTMENT OF JUSTICE, Tax Division, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ronald G. Bailey appeals his thirty-six-month sentence for filing false tax returns and his fifty-one-month sentence for income tax evasion. Bailey argues that the district court erred in its tax-loss calculation in determining his base offense level and wrongfully applied a two-level enhancement based on Bailey's use of sophisticated means to evade his tax obligations. For the following reasons, we reject Bailey's appeal and affirm the district court's calculation of his sentence.

I.

From 1991 to 2002, Bailey was the general manager of a nursing home located in Stafford, Virginia. When Bailey began his employment, the nursing home was known as Brookwood Nursing Home ("Brookwood") and was owned by William Bagley. Bailey was responsible for the day-to-day operations of Brookwood and was paid a salary of $95,000 per year as a consultant to, rather than employee of, Brookwood. Bailey regularly issued checks to himself from Brookwood's account to pay for his personal expenses. Bailey engaged in these efforts to avoid seizure of his assets to satisfy federal tax liens dating from his failure to pay individual income taxes from 1985 through 1987. Bailey received notice of a lien in the amount of $6,441 on December 14, 1993.

For the tax years 1991 through 1993, Brookwood had an outside accountant who prepared tax returns, cost reports, and financial statements based on Brookwood's general ledger. Bailey was responsible for filing Brookwood's tax returns and federal employee withholding taxes, but failed to do so. On January 12, 1994, Bailey received notice of a tax lien for Brookwood's unpaid employee withholding taxes in the amount of $73,273. Receiving this lien did not motivate Bailey to comply with the tax laws, and he received another lien for Brookwood's unpaid employee withholding taxes in the amount of $240,318 on September 30, 1996.

In 1996, Brookwood entered Chapter 7 bankruptcy and was sold to Platinum Care LLC ("Platinum Care"), a company of which Bailey was the managing member. Bailey reestablished Brookwood as the Brooke Nursing Center ("Brooke"), and appointed Nancy Colp as comptroller. Colp was responsible for Brooke's checking account, payroll, and accounts receivable and payable. Colp wrote the majority of Brooke's checks from 1996 through 1998 and all of the checks from 1998 through 2000.

In 1997, the Internal Revenue Service ("IRS") contacted Bailey about his failure to pay both his personal taxes and penalties assessed against Brookwood for unpaid employment taxes. Following this communication, Bailey filed individual tax returns for the years 1992 through 1995, indicating that he was a W-2 employee of Brookwood and attaching a withholding schedule on Brookwood

stationary. Bailey reported his total income in 1992 as $39,780; in 1993 as $41,184; in 1994 as $42,068; and in 1995 as $43,004. Subsequent investigation revealed, however, that these figures understated Bailey's income by $25,232.70 in 1992; $20,285.15 in 1993; and $80,604.13 in 1994. In total, Bailey underreported his personal income by more than $126,121.

From 1996 through 1999, Bailey presented Colp with his personal liabilities, including rent, utilities, and credit cards, to be paid with Brooke funds. In addition, Bailey had two of his associates, Daniel Guerrero and Jeffrey DeMoss, request funds from Colp on his behalf. Colp then issued Guerrero or DeMoss checks from Brooke on behalf of Bailey and noted on the general ledger that those distributions were for Bailey. Bailey received approximately $400,000 from Colp using these methods.

In 1998, in an additional effort to conceal his income, Bailey began directing Colp to withdraw cash from her personal savings account and deposit the funds into the personal accounts of Guerrero and DeMoss, accounts to which Bailey had complete access. Colp then issued a check to herself from Brooke's account in the transferred amount of the "loan," plus 12% interest. These transactions were evidenced with "loan" agreements between Bailey, Brooke, and Colp, totaling more than $300,000, but were never repaid upon the sale of Brooke in 2002. Colp eventually pleaded

guilty to tax evasion based on the unreported income interest she received from the "loans."

Finally, from 1996 through 2000, Bailey did not file any personal income tax returns. From 1996 through 2002, Brooke and Platinum Care did not file tax returns or remit employee withholding taxes. Based on distributed wages, the withholding taxes due from Platinum Care or Brooke during September 1996 through September 2002 totaled $819,535.07.

After a bench trial, the district court found Bailey guilty of four counts of filing a false tax return in violation of 26 U.S.C. § 7206(1) (2000) and four counts of income tax evasion in violation of 26 U.S.C. § 7201. Finding the total tax loss to be $1,416,117.50, a base offense level of 22, U.S. Sentencing Guidelines Manual ("Guidelines") § 2T1.1(c)(2) (2004), and adding a two-level enhancement for the use of sophisticated means, id. § 2T1.1(b)(2), the district court sentenced Bailey to concurrent terms of thirty-six months for failure to file tax returns and fifty-one months for tax evasion.

## II.

"In considering whether a sentence is unreasonable, we . . . review the district court's legal conclusions de novo and its factual findings for clear error." United States v. Hampton, 441 F.3d 284, 287 (4th Cir. 2006). In reviewing loss calculation, we

review de novo the district court's interpretation of what constitutes "loss," while accepting the calculation of loss absent clear error. United States v. Hughes, 401 F.3d 540, 557 (4th Cir. 2005) (reviewing determination of loss under § 2F1.1(b)(1)(I)). We review the determination of whether the defendant used "sophisticated means" for clear error. Id. (enhancement under § 2F1.1(b)(1)(I)); see also United States v. Kontny, 238 F.3d 815, 821 (7th Cir. 2001). Finally, any objection to sentencing not raised below is subject to review only for plain error. United States v. Olano, 507 U.S. 725, 731-32 (1993); United States v. Uzenski, 434 F.3d 690, 711 (4th Cir. 2006). Plain error requires that the defendant show that "(1) there was error; (2) the error was plain; and (3) the error affected his substantial rights." Uzenski, 434 F.3d at 708. "If these conditions are met, we may then exercise our discretion to notice the error, but only if it 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Ruhbayan, 406 F.3d 292, 301 (4th Cir. 2005) (alteration in original) (quoting Olano, 507 U.S. at 732), cert. denied 126 S. Ct. 291 (2005).

Under § 2T1.1(c)(1)(A) of the Guidelines, the tax loss for an offense involving underreporting of gross income is "equal to 28% of the unreported gross income . . ., unless a more accurate determination of the tax loss can be made." Under § 2T1.1(c)(3), for a failure to file a return, "the tax loss is the amount of tax

that the taxpayer owed and did not pay." In this case, the relevant conduct was Bailey's underreporting of his personal income taxes and his failure to remit payroll taxes for Brookwood and Brooke.

III.

A.

Bailey first contends that the district court erred in calculating the tax loss by including Brooke's unpaid employee payroll taxes. Bailey argues that Colp alone was responsible for payment of Brooke's withholding taxes and that such amounts should not be included in the calculation of tax loss for purposes of his sentencing.

In Plett v. United States, this Court held that the responsible person, for purposes of remitting payroll taxes, "is not limited to one person in a company but rather may include many persons connected with the same employer." 185 F.3d 216, 219 (4th Cir. 1999). To determine who is a responsible person, "we undertake a pragmatic, substance-over-form inquiry into whether an officer or employee so 'participate[d] in decisions concerning payment of creditors and disbursement of funds' that he effectively had the authority—and hence a duty—to ensure payment of the corporation's payroll taxes." Id. (alteration in original) (quoting O'Connor v. United States, 956 F.2d 48, 51 (4th Cir. 1992)). Plett set out six factors indicative of the requisite authority, "including whether

the employee (1) served as an officer of the company or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees." Id. We reject Bailey's argument because it ignores Plett.

Bailey argues that Colp was the general manager of Brooke and therefore responsible for remitting payroll taxes. Under Plett, however, more than one person can be responsible for remitting payroll taxes. The record reveals that Bailey often asked Colp to pay his personal expenses with Brooke funds and asked his associates to request funds from Colp on his behalf. In addition, Bailey used Colp and her personal assets to further his "loans" from Brooke, the scheme for which Colp pleaded guilty to tax evasion.

Although Colp wrote the majority of Brooke's checks and served as comptroller, Bailey remained in actual control of disbursement of funds. Indeed, Bailey directed Colp to make payments to himself and to his associates that were not for legitimate business expenses of Brooke. Colp's tax evasion, rather than being an independent scheme, was part and parcel of a scheme Bailey directed to obtain cash payments for himself without having to pay taxes on those amounts. Given that Bailey engineered multiple schemes to

avoid payment of taxes, and in each directed Colp to make various withdrawals and payments from the Brooke bank account, it is evident that he had the actual authority concerning payment of creditors and disbursement of funds.

Finally, Bailey was a 5% partner in Brooke, was the managing member of Platinum Care, which owned Brooke, hired an accountant to perform audits for Brooke, and signed a contract with ADP to provide payroll services for Platinum Care. In sum, Bailey met all six of the Plett factors and was thus a person responsible for payment of Brooke's payroll taxes. Accordingly, the district court did not err by including tax loss attributable to Brooke's nonpayment of payroll taxes in computing Bailey's tax loss.

B.

Bailey next contends that the district court erred in calculating the tax loss attributable to his tax evasion by including all payments from Brookwood and Brooke to him as taxable income because he regularly transferred payments to Bagley and that the general ledger was not always accurate with regard to these payments. Bailey also argues that payments to Gilbert Davis, Guerrero, and DeMoss were wrongly attributed to him and that those payments do not constitute his taxable income because the individuals actually performed work for Brookwood and Brooke.

Bailey did not raise this argument in the district court, thus we review the issue for plain error.

To show plain error, Bailey must demonstrate that any loss-calculation error affected his substantial rights. "In some instances . . . the amount of tax loss may be uncertain; the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts." Guidelines § 2T1.1 cmt. 1. The district court found a total tax loss of $1,416,117.50. Bailey's offense level was therefore a 22, as the tax loss was between one million and two-and-a-half million dollars. Id. § 2T4.1(I). The offense level below this range requires loss of less than one million dollars. Id. Accordingly, for Bailey to demonstrate that any district court error affected his rights, he would have to demonstrate that the tax loss calculation was erroneous by at least $416,117.50, such that the tax loss would have been less than one million dollars, thereby reducing his offense level from 22 to 20. Bailey cannot make such a showing.

The tax loss due to Bailey's underreporting of his personal income from 1991 through 1995 is $79,308.19. The tax loss from Bailey's unreported income from 1996 through 2000 is $197,241.24. In total, the tax loss from Bailey's failure to fully pay income taxes on his personal income is $276,549.61. Thus, even if the district court erred in calculating the tax loss due to Bailey's conduct by the full amount of loss due to his personal tax evasion,

there is no prejudice, as a decrease of at least $416,117.50 in loss is required to reduce Bailey's offense level. Absent prejudice, Bailey cannot prevail on his claim that the district court wrongly included income to Bagley and others in the tax-loss calculation. Furthermore, Bailey raised his argument about payments to Guerrero, Davis, and DeMoss for the first time in his reply brief and it is therefore deemed waived. See Cavallo v. Star Enter., 100 F.3d 1150, 1152 n.2 (4th Cir. 1996) ("Under the decisions of this and the majority of circuits, an issue first argued in a reply brief is not properly before a court of appeals.").

Even assuming that Bailey could overcome the procedural obstacles to relief regarding the calculation of tax loss as to his personal income, we conclude that the district court did not plainly err in this regard. Scott Reynolds, an IRS special agent and prosecution summary witness, calculated the tax loss due to Bailey's conduct based on an examination of the accounting records of Brookwood and Brooke. Given that Reynolds only included checks written to Bailey, and assigned to Bailey by the internal records of Brookwood for the period of 1991 through 1995, and given Bailey's use of nominees to conceal income, it is likely that the calculations understated Bailey's actual income during those years.

Bailey's contention that the general ledger of Brookwood erroneously recorded some distributions to him is not supported by

the record. Although there is evidence that the ledger account number assigned to Bailey was previously assigned to Bagley, the Brookwood employees who worked with the accounting system knew of this change and assigned disbursements to the appropriate accounts. Bailey himself directed when checks issued to him were to be cashed and given to Bagley, and those checks were denoted as such. Any checks to Bailey that were for the benefit of Bagley but recorded as solely for Bailey's benefit were so recorded at the request of Bailey himself.

Similarly, Bailey claims that certain payments to Guerrero, DeMoss, and Davis from 1996 through 2000 were erroneously counted as his income. DeMoss was on Brooke's ADP payroll, and Guerrero was employed by Brooke for only one month. Davis performed work for Brooke, but as a volunteer rather than employee. Colp paid both Guerrero and DeMoss, however, from her personal account as part of Bailey's loan scheme. Any cash transfers to Guerrero, DeMoss, and Davis were likely part of that scheme, as DeMoss would have been paid through ADP for any legitimate work for Brooke, Guerrero was employed by Brooke for only a short time, and Davis was never employed by Brooke.

In sum, even if Bailey could demonstrate prejudice from any error, the district court did not plainly err in calculating the tax loss due to Bailey's underreporting of his personal income. We

affirm the district court's determination of Bailey's base offense level.

C.

Next, Bailey argues that the district court erred in applying the two-level sophisticated means enhancement to his offense level. Section 2T1.1(b)(2) of the Guidelines provides for a two-level enhancement if the tax offense involves "sophisticated means," defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment" of the offense. cmt. 4. The examples provided by the comment to § 2T1.1(b)(2) are "the use of fictitious entities, corporate shells, or offshore financial accounts." Id.

"The average criminal tax fraud . . . involves some concealment; 'sophisticated' tax fraud must require more." Kontny, 238 F.3d at 820-21. The sophistication does not refer to the "style" of the defendant—"the degree to which he approximates Cary Grant—but to the presence of efforts at concealment that go beyond (not necessarily far beyond . . . ) the concealment inherent in tax fraud." Id. at 821. In United States v. Stone, this Court rejected an argument that a defendant's tax evasion was not sophisticated because it involved a mere failure to report income from "side jobs," including in-kind benefits. 85 Fed. App'x 925, 938 (4th Cir. 2004) (unpublished opinion). Rather than simply not completing tax returns or providing false information, the defendant in Stone used

-13-

in-kind gifts and services, as well as fictional entities, to disguise the unreported income, making IRS detection more difficult. Id.

In United States v. Boyer, the defendant instructed his attorney to hold funds in an escrow account until he withdrew the funds into his children's accounts. 166 F.3d 1210, 1998 WL 830677, at *2 (4th Cir. 1998) (unpublished table decision). He then withdrew money from those accounts to purchase a house in his wife's name. Id. Finally, "through a series of cashier checks, he moved the funds to new accounts." Id. This Court upheld the enhancement, commenting that the series of transactions undertaken by the defendant was an attempt to hide assets from the IRS. Id. Similarly, in United States v. Becker, the Seventh Circuit upheld the enhancement for a defendant who used a numbered bank account, canceled all accounts in his name, and deposited his earnings in his son's account. 965 F.2d 383, 390 (7th Cir. 1992).

In this case, there is no evidence that the district court plainly erred by imposing the enhancement. From 1991 through 1995 Bailey did not file personal tax returns, an omission made possible because he had been paid as a consultant to, rather than an employee of, Brookwood. At the same time, he was not remitting Brookwood's payroll taxes, thus ensuring an on-hand supply of cash to fund his salary and pay most of his personal expenses, without generating W-2s or other documents that would alert the IRS to his

income. Having Brookwood pay his expenses directly and compensate him as a consultant is akin to the acceptance of in-kind gifts at issue in Stone. When Bailey finally did file tax returns for those years, he understated his income, knowing that no W-2s had issued.

Rather than continue to receive cash payments as a consultant, Bailey then engaged the use of nominees to receive payments from the personal account of Colp, the comptroller of Brooke. Those "loans" were transferred, in cash, from the nominees to Bailey, while Colp received payments from Brooke, plus interest. During this time, Bailey also failed to remit payroll taxes for Brooke, but provided employees with W-2 forms indicating the payroll taxes that had been withheld from their paychecks. This continuing failure to file enabled Brooke to retain more cash than was lawful, providing the funds for Bailey's "loans" and Colp's "fees." These efforts go beyond the concealment inherent in simple tax evasion. Bailey's conduct is similar to that of the defendants in Boyer and Becker: utilizing third-party accounts to mask income, while closing or refraining from receiving cash in personal accounts to avoid IRS detection. Accordingly, the district court did not plainly err in enhancing Bailey's sentence by two offense levels because of his use of sophisticated means in evading payment of income taxes.

IV.

We affirm Bailey's sentence as calculated by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid our decision.

AFFIRMED
