**In re Frank H. BARNETT, Jr., Debtor**

**Frank H. Barnett, Jr., Plaintiff**

**v.**

**United States of America, Department of Treasury (Internal Revenue Service), and Larry Allan Gardner, Defendants.**

**Bankruptcy No. 04–01283–11.**
**Adversary No. 06–05022.**

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

April 1, 2008.

---

13. See note 6 *supra*.

Raymond R. Pring, Jr., Manassas, VA, for Plaintiff.

Charles H. Keen, Washington, DC, for Defendants.

Larry Allan Gardner, Bentonville, VA, pro se.

### DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

At Harrisonburg in said District this 1st day of April, 2008:

The matter before the court for decision is a complaint filed by the Debtor to determine the extent of a claim asserted by the United States of America, Department of Treasury, Internal Revenue Service (herein "IRS") in the Debtor's chapter 11 case. A trial was held on September 5, 2007 at which the Debtor, the third-party Defendant (herein Gardner), and an IRS revenue officer testified. Following the Plaintiff's evidence, a directed verdict was entered in favor of the IRS as to an alleged $30,000 payment made by the Debtor and Gardner toward delinquencies owed to the IRS. (See Docket Entry #33.) The matter of whether the Debtor was a responsible person of Shen–Valley Auto Body II, Inc. (herein Shen–Valley), personally liable under 26 U.S.C. § 6672 for unpaid trust fund taxes of the company for the period from October 1, 1996 through December 31, 1997 was taken under advisement. The parties have filed memoranda of authority and argument which set forth their respective positions on the Debtor's liability. The court has considered these written memoranda and oral arguments made at trial. For the reasons stated below, the court holds that the Debtor is not personally liable for unpaid Shen–Valley trust fund taxes assessed for periods prior to 1998.

*Facts:*

The Debtor and Gardner were president and vice-president, respectively, of Shen–Valley from 1994 when the company was established until it was dissolved sometime after 1997. (Trial Tr. 14.) They each owned fifty percent of the stock in the company. (Trial Tr. 15.) The Debtor made an initial investment of equipment and cash into Shen–Valley, followed by subsequent loans. (Trial Tr. 17–18.) Gardner served as the company's operations manager. (Trial Tr. 15.)

In addition to being an officer of Shen–Valley, the Debtor has owned and operated an automotive equipment company named Front Royal Hydraulics since 1971. (Trial Tr. 28–29.) The Debtor testified to working an average of twelve hours a day at Front Royal Hydraulics at all periods other than 1997, when he was traveling often for his son's cancer treatment. (Trial Tr. 29.)

On October 24, 1994, the Debtor opened a checking account in the name of Shen–Valley Auto Body # 2 by signing a business account agreement with First Bank. (Trial Tr. 22.) Four days later, the business account agreement with First Bank was modified to add Larry and Jo Ann Gardner (herein Mrs. Gardner) to the list of signatories. (Trial Tr. 23.) During 1997, the Debtor either wrote and signed or just signed approximately forty checks (Trial Tr. 27; Plaintiff's Ex. 4–11), nine of which were entered into evidence by the IRS at trial.[1] (Trial Tr. 64–69.) One of these checks signed by the Debtor was for trust fund taxes. (Trial Tr. 68.) In most cases, the Debtor signed or wrote checks because Gardner or Mrs. Gardner were unavailable to do so or because the Debtor was picking up parts at the request of

---

1. The IRS also introduced five checks written in 1998 for payment of Shen–Valley's trust fund taxes that were signed by the Debtor. (Trial Tr. 63.)

Gardner. (Trial Tr. 25, 70, 73, 78.) The great majority of checks written from the Shen–Valley account were written and signed either by Gardner or his wife, Mrs. Gardner, who was the treasurer of Shen–Valley. (Trial Tr. 27; Plaintiff's Ex. 4–11).

The Debtor testified that sometime in 1998 he became aware of checks written by Mrs. Gardner from the Shen–Valley account, the stubs of which purported to pay vendors and suppliers but were actually made out to the Gardners' child and nephew, who were employed at Shen–Valley. (Trial Tr. 35–36.) Soon after the Debtor confronted Mrs. Gardner on the issue, she resigned from her position as treasurer of Shen–Valley. (Trial Tr. 36.) On April 21, 1998, ShenValley's existing checking account with First Bank was modified to remove Mrs. Gardner from the authorized signatory list. (Plaintiff's Ex. 14).

The Debtor testified that he became aware of Shen–Valley's unpaid trust fund taxes sometime in 1998. (Trial Tr. 31.) Gardner testified that he told the Debtor of the unpaid trust fund taxes when the issue first arose in 1997. (Trial Tr. 80–81.) Gardner specifically described one instance in which the Debtor told Mrs. Gardner to file the Shen–Valley payroll tax returns "whether you have the money or not." (Trial Tr 83, 124.) The Debtor and Gardner explained that at no point did the Debtor tell Gardner or Mrs. Gardner to not make employment tax payments, nor did he direct the payment or non-payment of any debt owed. (Trial Tr. 31–32, 78.)

The Debtor and Gardner made clear in their testimony at trial that the Debtor was not involved in the day-to-day operations of the company through 1997. (Trial Tr. 16–17, 78.) To dispute this argument, the IRS presented evidence that the Debtor wrote or signed nine Shen–Valley checks during 1997 and that he fired one employee for using a Shen–Valley truck without permission. (Trial Tr. 19–20, 48–49.)

The IRS presented testimony at trial of an IRS agent, Ms. Westfall, to dispute the Debtor's claims of not being involved in the day-to-day activity of Shen–Valley. (Trial Tr. 88–113.) Ms. Westfall interviewed the Debtor and Gardner at an IRS "Problem Solving Day" in Roanoke, Virginia on March 26, 1998, during which she wrote the Debtor's answers to the interview questions "more or less in his words" on an IRS form titled "Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Tax." (Trial Tr. 91.) Ms. Westfall then explained that her usual practice in such interviews is to have the interviewee sign the form, confirming that the information given is correct. (Trial Tr. 91.) According to the form filled out by Ms. Westfall, the Debtor explained in this interview that he helped with business decisions; had previously experienced tax problems with another business he owned; was involved in hiring and firing, managing, paying bills, dealing with suppliers, negotiating loans, opening the corporate bank accounts, signing checks, making bank deposits, and authorizing payroll checks; became aware of the delinquent payroll taxes when they were due; informally met with Gardner regarding the delinquent taxes; tried to get money to pay the delinquent taxes; and allowed other obligations to be paid during the accrual of the delinquent taxes. (Defendant's Ex. D.) Ms. Westfall interviewed the Debtor and Gardner simultaneously but filled out separate forms for each. (Defendant's Ex. D, I.) With the exception of a few questions, the answers written in the form filled out by Ms. Westfall for Gardner's responses were identical to those filled out in the Debtor's form. (Trial Tr. 110–113.)

At trial, the Debtor testified to being at such an interview in 1998, but stated that he did not remember Ms. Westfall conducting the interview nor did he remember signing the form filled out by Ms. Westfall at the interview. (Trial Tr. 54–55.) The Debtor explained that he does not sign his name the way it appears on the form. (Trial Tr. 54.) Gardner also testified to not recognizing Ms. Westfall as the interviewer in Roanoke. (Trial Tr. 118.)

### Discussion:

■ Employers are required to withhold federal income taxes and social security taxes from their employees' wages pursuant to 26 U.S.C. §§ 3402(a) and 3102(a). These withheld amounts are sometimes referred to as "trust fund taxes." When an employer fails to submit withheld trust fund taxes to the government, 26 U.S.C. § 6672 [2] provides that the government impose personal liability on persons responsible to collect and pay over taxes. In order to be held liable under § 6672, two elements must exist: "(1) the party assessed must be a person required to collect, truthfully account for, and pay over the tax, referred to as a 'responsible person'; and (2) the responsible person must have willfully failed to insure that the withholding taxes were paid." *O'Connor v. United States*, 956 F.2d 48, 50 (4th Cir.1992).

■ With regard to determining trust fund tax liability, the Fourth Circuit has established that:

> The Commissioner's determination of tax liability is presumptively correct and in cases involving section 6672 liability the courts generally have held that the burden is upon the taxpayer to establish

that the Commissioner's determination was erroneous. This presumption is not limited merely to the amount of the assessment but requires that the taxpayer demonstrate that he was not a responsible person or that his failure to pay the taxes was not willful.

*United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir.1980). The taxpayer has the "burden of proving the Government's assessment wrong by a preponderance of the evidence." *Id.* at 298 n. 4. The burden of production and persuasion remains with the party assessed liability under § 6672 in the bankruptcy context. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 21–22, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

■ With regard to the "responsible person" element, the Fourth Circuit has explained that "the case law interpreting § 6672 generally refers to the person required to collect, account for, and remit payroll taxes to the United States as the 'responsible person.'" *Plett v. United States*, 185 F.3d 216, 219 (4th Cir.1999). The "responsible person" is not limited to a single person in a company. *Id.* Additionally, "a party cannot be presumed to be a responsible person merely from titular authority." *O'Connor*, 956 F.2d at 51. The focus of the inquiry into whether a party is a "responsible person" is on substance rather than form. *Id.* "The substance of the circumstances must be such that the officer exercises and uses his authority over financial affairs or general management, or is under a duty to do so, before that officer can be deemed to be a responsible person." *Id.* "[T]he 'crucial inquiry is whether the person had the

---

**2.** 26 U.S.C. § 6672(a) provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any

manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

"effective power" to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed.' " *Plett*, 185 F.3d at 219 (quoting *Barnett v. IRS*, 988 F.2d 1449, 1454 (5th Cir.1993)).

To aid in the determination, the Fourth Circuit has adopted six factors to serve as indicia of the requisite authority necessary to be considered a "responsible person" under § 6672:

whether the employee: (1) served as an officer of the company or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees.

*Plett*, 185 F.3d at 219. No single factor is dispositive. *Barnett v. IRS*, 988 F.2d 1449, 1455 (5th Cir.1993).

Although the Debtor was, in title, president of Shen–Valley, he had no control over the company's payroll in 1997. Gardner testified at trial that his wife was responsible for making sure that the payroll taxes were filled out and paid. (Trial Tr. 83.) Additionally, the Debtor worked full time at his hydraulics company and spent a lot of time traveling for his son's cancer treatment in 1997, leaving him little time to be involved with the affairs of Shen–Valley, much less "control" the company's payroll. At trial, Gardner explained that the Debtor was "hard to get a hold of" in 1997.[3] (Trial Tr. 122.)

The IRS argues that the Debtor did control payroll because he attempted to raise money when he became aware of the trust fund tax delinquency. However, the Debtor's interest in paying off delinquent trust fund taxes does not necessarily reflect control over payroll. Clearly, Debtor had an interest as an investor in Shen–Valley in paying delinquent trust fund taxes.

In addition, the Debtor had no control over which creditors were paid and when they were paid. Although the Debtor had access to the Shen–Valley checkbook and had the authority to sign checks, he typically only signed checks when he was asked to pick up parts or when Gardner or Mrs. Gardner were not available to sign checks. Gardner specifically testified that he decided which bills to pay and that he was not aware of any instances in which the Debtor wrote company checks without seeking his permission first. (Trial Tr. 78.)

The IRS makes the argument that the fact that the Debtor had the authority to sign checks and did so in certain instances provides the necessary evidence to establish that the Debtor was a responsible person under § 6672. The evidence presented that the Debtor did not sign checks without Gardner's permission, though, refutes the idea that the Debtor "exercise[d] and use[d] his authority over financial affairs or general management." *See O'Connor*, 956 F.2d at 51 ("The mechanical duty of signing checks ... [is] not determinative of liability under § 6672.").

Third, there was evidence presented at trial to support the Debtor's proposition that he was not involved in the day-to-day management of Shen–Valley during 1997. Although he did initially open the company's checking account, made periodic loans, and was consulted occasionally on business matters, the Debtor was not "active in Shen–Valley business during 1997" according to Gardner. (Trial Tr. 79.) As men-

---

**3.** Gardner's testimony with respect to Debtor is credible because it exculpates Debtor from liability for which Gardner is or may be personally liable.

tioned above, the Debtor did not have a lot of extra time to be involved with the day-to-day business of Shen–Valley during 1997 due to his son's cancer treatment and his other hydraulics company. The Debtor did not receive a salary from the company. (Trial Tr. 34.) Furthermore, the Debtor and Gardner testified that the Debtor invested in the company with the hopes of turning a profit on the real estate, while Gardner served as the day-to-day operational manager, a paid officer of the company.

The IRS contends that the fact that the Debtor was occasionally consulted regarding Shen–Valley and the fact that he had a key to the office and the ability to write checks demonstrates that he participated in the day-to-day management of Shen–Valley. Although these facts are indicative of an officer with day-to-day responsibilities within a corporation, they do not overcome evidence presented by the Debtor that he did not participate in day-to-day operations such that he "effectively had the authority—and hence a duty—to ensure payment of the corporation's payroll taxes." *See Plett*, 185 F.3d at 219, *see also O'Connor*, 956 F.2d at 51 ("The district court's conclusion that O'Connor's check signing authorization, his figurehead title, and 50% ownership, gave O'Connor the requisite authority over [the corporation] cannot be supported where the substance of the arrangement was that Voight exercised the authority to run the business and that O'Connor, as an investor, only provided capital without involving himself in the corporation's day-to-day activities.").

As to whether the Debtor possessed the power to write Shen–Valley checks, the evidence is clear that he did possess that power and that he actually initially opened the Shen–Valley checking account. But, the Debtor rarely signed checks, and with even greater rarity wrote checks. The testimony presented suggests that when the Debtor did write checks, it was only with the permission of Gardner.

Finally, with regard to the hiring and firing of employees, Gardner testified that he alone hired and fired employees of Shen–Valley. (Trial Tr. 78.) The IRS did present evidence that the Debtor had fired an employee for driving a Shen–Valley tow truck without permission, but additional evidence suggests that this was a one time occurrence under odd circumstances and that it was not the Debtor's place to hire and fire employees. (Trial Tr. 78.)

The form filled out by Ms. Westfall at her interview with the Debtor and Gardner presented by the IRS at trial contains a lot of information contradictory to evidence presented by the Debtor at trial. Specifically, the form stated that the Debtor was involved in the management of Shen–Valley, paid bills, dealt with suppliers, authorized payroll checks, was involved in the hiring and firing of employees, and allowed other obligations to be paid during the accrual of the delinquent taxes. In the absence of further information, this evidence would confirm the Debtor as a "responsible person," but this information was taken on March 26, 1998, three months after the period in question.[4] The Debtor

---

4. Although the "Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Tax" form indicates that Shen–Valley had failed to collect and pay trust fund taxes between October 1, 1996 and December 31, 1997, the form does not indicate the periods for which the

questions were asked. Furthermore, many of the questions on the form request that the period for which the answer is relevant be provided. Neither form filled out by Ms. Westfall at the Debtor's and Gardner's interview provided the periods for which the answers were relevant.

signed five 941 trust fund checks within the first three months of 1998, indicating that his role within Shen–Valley had changed between the end of 1997 and the beginning of 1998. (Defendant's Ex. H.) Furthermore, most of the answers on the form filled out for Gardner are identical to those on the Debtor's form, suggesting that by taking both officers' interviews at the same time, the distinctions between Gardner's and the Debtor's roles at Shen–Valley were muddled. Finally, there is some question as to who actually took the Debtor's and Gardner's interview on March 26, 1998.

A number of factors adopted by the Fourth Circuit as indicative of a "responsible person" under § 6672 favor the Debtor as a "responsible person", while the balance of these factors suggest the Debtor was not a "responsible person" of Shen–Valley in 1997. The Debtor served as an officer of Shen–Valley, possessed the power to write checks, and seemed to possess the ability to hire and fire employees; but he did not control company payroll, did not determine which creditors to pay and in what order, and did not participate in day-to-day management of the company in 1997.

The evidence presented by the Debtor suggests that he was not in a position in 1997 within the corporation to pay the taxes owed. Shen–Valley had paid personnel in 1997 to deal specifically with payroll, the payment of creditors, the day-to-day management, and the hiring and firing of employees. Furthermore, the Debtor worked full time at his hydraulics company and cared for his son in 1997, making the Debtor "hard to get a hold of."

The Debtor has presented sufficient evidence to support by a preponderance of the evidence a finding that he did not have the "effective power" within Shen–Valley prior to 1998 to pay the trust fund taxes. Having found that the Debtor was not a "responsible person" for purposes of determining § 6672 liability, it is unnecessary that the court determine whether the Debtor's failure to pay the trust fund taxes for Shen–Valley was willful. For the reasons stated herein, it is:

## ORDERED:

That the Debtor is not personally liable for Shen–Valley's unpaid trust fund taxes assessed for periods prior to 1998 and that the IRS's claim should be adjusted to reflect such determination within thirty (30) days from the date that this order becomes final.

Copies of this order are directed to be sent to counsel for the Plaintiff, Raymond R. Pring, Jr., Esquire, 9200 Church St., Suite 400, Manassas, VA 20110; to counsel for the Defendant, Charles H. Keen, Esquire, Trial Atty Tax Div., U.S. Justice Dept, PO Box 227 Ben Franklin Station, Washington, DC 20044; and to the co-Defendant, Larry Alan Gardner, 1201 Pilgrams Way, Bentonville, VA 22610.